All right, the next case before us is 19-1454 and 19-1455, SEC v. GenAudio Inc. is the lead appellee. Counsel for appellant, would you make your appearance and proceed? Thank you, Your Honor, and may it please the Court, my name is David Aveni, counsel for appellant GenAudio, and with me is Andrew Holmes, counsel for appellant Jerry Maibu, and we will attempt to reserve two minutes for our rebuttal time. And I would like to focus my argument this morning on two issues. First, that the district court committed reversible error when it granted summary judgment based on the March 10th email which the on the third misrepresentation, even though the SEC's key witness, Victor Toscarino, agreed there was nothing misleading in that statement. My colleague, Andrew Holmes, will focus his argument on the district court's errors in connection with the remedies motion, disgorgement, and civil penalties. And we will ask the court respectfully to reverse the district court's order granting summary judgment and remand the case to the district court. Now, turning to the first issue I'd like to address, the district court granting summary judgment was error based on the March 10th email because the SEC withdrew that email and no longer contended on summary judgment that that email was a violation of the federal securities. And am I correct that argument was raised the first time in your reply brief, and that's the reason we have this sort of satellite litigation going on about whether to file certify briefs and all of that sort of stuff. And if the first time you raised that contention was in your reply brief, then why isn't that way? Good question, your honor. Let me address that in several steps. First of all, we addressed the very closely linked argument that the SEC in our opening brief that SEC did not satisfy the standard under federal rule of civil procedure 37C. Then in our reply brief, we expanded on that argument and said the reason you can tell the SEC did not satisfy 37C is because they actually withdrew the March 10th email rather than attempt to satisfy that standard. That's how that is. And let me pause you there. One is a claim discovery violation. They didn't give it up in discovery. The other is an affirmative waiver. We will don't want you to consider it. How are those two things? I'm struggling to see how those two things are related. I mean, that's a distinct ground. The thing that you raised in your reply brief would say that they don't have a right to even argue about it. It's gone. The other is a question of whether they could argue whether they actually committed a discovery violation. If you were right on the withdrawal, there's nothing for them to say, right? So how are those two things related? So let me address that argument or that issue in three points. First, let me talk about why I don't think it, and I want to address your question, but why I think that the district court's order must be reversed regardless of that forfeiture issue. And then I'll talk about the forfeiture issue the SEC laid out. Number one, the SEC argues we didn't raise it before the district court, and number two, with respect to the reply brief. So first, why I think the district court's order must be reversed regardless of this forfeiture issue. And that is because of the issue we raised at every turn in this case, including in our opening brief, that the district court ignored that the SEC failed to satisfy federal rule of civil procedure 37C. There's no waiver or forfeiture issue on that point. Federal rule of civil procedure 37C says that if a party fails to disclose information and discovery, they may not use it in support of a motion unless their failure was substantially justified or harmless. And this is key. The SEC has not disputed that they failed to disclose it in their discovery responses. There's no dispute about that. The SEC did not disclose it. And they literally contended that it was harmless, right? They haven't said it was harmless. They never attempted before the district court to satisfy that standard. Rather than attempt to satisfy the standard, they withdrew the email. Essentially, their footnote says, rather than try to satisfy the standard, we're no longer contending that email in response to our arguments. The SEC said we're no longer contending it's a violation of the securities laws on summary judgment. So I thought your argument was going to address only the discovery violation first. I mean, those, if you don't, if you cannot rely upon a purported waiver, well, a purported withdrawal of the document, then talk to me about why the court erred if the only issue is their failure to will give it up in discovery. Right, that's and that's what I'm trying to address. So there's no dispute that they failed to disclose it. And so federal rule of 30 civil procedure 37 c says it's an automatic bar, they cannot use it unless they satisfy the standard of substantially harmless, substantially justified, or harmless. And the SEC did not attempt to satisfy that standard before the district court. And they also have not argued in the appellate briefing before this court that they satisfy the standard, you won't see in any of the SEC briefs and argument that they satisfied rule 37. See, because they didn't attempt to do so. The SEC is the one that has the burden under federal rule of civil procedure 37. See, they didn't attempt to satisfy it, they couldn't satisfy it. And as a result, the automatic sanction applies. And the district court must be reversed on that issue. And again, there's no forfeiture or waiver of that issue. Let me then what do you what do you think about the idea that the SEC is withdrawal of those two statements at the district court was a concession that your discovery argument was correct? Are you asking? Do I think the SEC withdrew it? No, I know you think they withdrew it. I'm asking you if you think that is a is an essence a concession that you were right on the SEC knew it could not satisfy. Instead, they withdrew the email. And it's because they didn't attempt to satisfy it. And I think recognized they couldn't satisfy it. That is why they withdrew it. And because the district court granted summary judgment on it. Anyway, that's why the district court order must be reversed. Let me let me let me walk through that for a quick second. Let's let's assume that all right, you make the discovery argument, they they purport to let's just go assume for the sake of argument that they they say, all right, you don't have to consider that for us to win SEC says that you don't have to consider the March email, the court decides to go ahead and consider it. My question to you is the consequence of that. Why does that automatically equal error if the court itself deems this to be a harmless act of discovery violation? In other words, if the court decides to rule on it, and and making its own determination tacitly or otherwise that this was harmless, and why is that not good enough? Because rule 37 c is an automatic bar. It was the SEC burden to satisfy the standard. And I think Judge Carson is correct. The SEC acknowledged, essentially, it could not satisfy the standard and did not even attempt to do so. And instead, well, no, that's that's a different thing than saying I'm not going to I'm not going to address you. I don't need this to win. And that's the way I read that footnote. I don't need this to win. And therefore, go ahead court deal with it without the March email. And in the court decides to consider the March email, I guess what I'm trying to get at is, is there any case law that says the court can't tacitly make the determination this is harmless, I don't care what, whether they raised in discovery, it's harmless, I'm going to go ahead and consider it. I'd say two things about that. First, Your Honor, is that it's the SEC's burden of proof to demonstrate harmlessness, and they didn't even attempt it. Why would you just tacitly say, I don't see anything harmless in there was no analysis about that. I'll give you an example. We never conducted discovery on the March 10 email, because the SEC didn't list it and its discovery responses as a violation. You've got the the testimony of Victor Tiscarano. I never asked him about that email, because it wasn't disclosed in discovery as a potential problem. So, so if the court's ruling or decision was that it was harmless, then I think that's also error because we never got to conduct discovery, even with, for example, the key witness in this case, based on that email. Well, you can see, you were fully able to address any misrepresentations in a summary judgment briefing. In misrepresentations, yes, and we did so. But again, we never, we never got to conduct discovery with Victor Tiscarano, for example. Where is the prejudice? I'd say the prejudice is twofold, Your Honor. Number one is we did not get to conduct discovery on that discovery. There's one issue on this one. But there was lots of other evidence of misrepresentations all over the place. Sure, but what I'm, but the district court granted summary judgment on this particular email, and what I'm saying is Rule 37C. He referenced it, he referenced it, but it was, there was lots of other stuff in the record. I understand. He found liability based on six misstatements. That was one of the six. Okay, so now we got five. Two, actually. I'm sorry, it was two of the six, right? Because the more... How many do we have left? Four. So we'd have four left. Okay, so let's talk about those four. Were they or were they not misrepresentations? And I can, I can go through all... I think they were. I'm happy to go through all six of them. I want to make sure I pass with sufficient time for my colleague, Mr. Holmes, to address remedies. But I'm happy to address all six. They're all in my papers. I would point to number three. So we just talked about one and two. Number three is the misrepresentation on March 15th. And I'll just point out again, the SEC's own key witness, Victor Tiscarreno, the Apple contact for Gen Audio, acknowledged there was nothing misleading about that statement. So I think that knocks out that one. So I would, just running out of time... You're down to four minutes. I'm sorry, are you running? You're down to four minutes. Yes, let me pass to my colleague. Thank you very much, Your Honors. My name is Andrew Holmes, Holmes, Taylor, Cowden, Jones. I represent Jerry Mayaboo in this matter. So quickly, I'd like to try to reserve two minutes for any any rebuttal. But I think to cut to the chase, it's really the Maxon argument that I wanted to address here. And that is that, you know, well, of course, you can get to liability without a causal connection between the dollars in a remedy. But you need to have some causal connection to the dollars that are being awarded as a remedy under Maxon and its progeny. And that wasn't done here. The court, I think, really tellingly said, and we pointed it out in our opening brief at page 49, and it's in the appendix, volume 10 at 2366. The court said, on this record, only one of the 2010 misrepresentations shows a causal link between the misrepresentation and Gen Audio's receipt of money. And then it goes on to state exactly which one that is. So if there is one misrepresentation that shows a causal link, then under the Maxon articulation of where you get to remedies on that, then that should be what ties the actual pecuniary aspect of any remedy. So that April 30th, 2010 email that it was discussing is for $15,000. It caused a $15,000 share purchase. So our argument is that that should be the limit of the remedy. That's the only thing that the SEC even attempted to find a causal link for. And then really quickly. If the violation, the anti-fraud violations related to offerings, and that's how they're reviewed, 2010 offering statements, 2011 offering statements. Well, being able to find causal link, if what this disgorgement remedy is designed to get at is your wrongful conduct in securing funds, based upon that wrongful conduct, if both of those collections of statements related to offerings, why wouldn't the court be appropriate in determining how much money was made in those offerings? I mean, without having to make some one-to-one leakage between somebody that makes X statement and gets X payoff, why isn't that appropriate? Well, we're not necessarily saying it should be a one-to-one. I mean, the case law is clear that it can be a reasonable approximation. One of the issues here is that- I mean, a reasonable approximation, that implies a lot of discretion to determine the range of wrongful conduct. It does, of course. The point that we're trying to make, though, is that the court found a specific misrepresentation in just one. So at a minimum, shouldn't it be limited to whatever money came in from that point forward? Shouldn't there be some kind of a limitation on that we deal with on this? You know, the SEC simply says, well, we did enough by showing there was some misrepresentation. And we would submit that the Maxon Court and its progeny requires a little more detail than that. They can't just simply say, oh, there were misrepresentations, and that's enough. I would like to reserve some time for rebuttal. Okay. That's fine. Thank you. May it please the court. Emily Truparisi for the United States Securities and Exchange Commission. I want to go to this issue of remedies and start there, and then I can circle back to some of the other issues that were discussed, if there's time. The district court's imposition of was well within the court's discretion. It fully applied the Maxon case here, and it found that the reasonable approximation of gains was, as Judge Holm said, the amount of unjust gains from the two offerings. And it's important to remember here that there were sort of two independent ways that the district court arrived at that disgorgement amount. There's the anti-fraud piece of the case, but there's also the Section 5 piece of the case, and they're independent. And so I just want to make sure there's independent routes to the same disgorgement award there. And the argument that I heard here from Mr. Holmes is one that they didn't quite make below this idea that, well, at least from that misstatement that brought the $15,000 in onward, that should have been the amount. That was not made below. The only argument that was made was that it should be limited to the $15,000 because that was the one statement where there was that specific connection. But that's not what this court requires for a reasonable approximation. That's a tracing requirement that's just not found in this court's laws. The SEC put forth a reasonable approximation of gains, that it was the amounts from the offerings based on both sides of the analysis, the anti-fraud and the registration provisions. And all they came back with was this $15,000 tracing argument, which is not supported, it's a legal argument that's not supported by the precedents. So we think the court was well within its discretion in setting the disgorgement amount the way it did under both prongs. I want to go back to the consideration of the March statement. Yes, that's where we're going next. All right, that's good. Let's talk to us about why the court did not err, particularly given the fact that even if we don't construe that footnote as being a permanent withdrawal, it certainly, I read it as suggesting, you don't have to consider this court to reach the decision in this case, and they'll let you commit a discovery violation. So starting with that framework, explain why there's no error, please. So I think there's no error for a couple of different reasons. I think, first of all, I think, and it's something that you said in your question, Judge Holmes, but it's you may not, you may consider. It's right, it was left up to the district court's discretion. The way I read that footnote is we've alleged many misstatements. Again, remember, there were even more misstatements than what the district court focused on. There were more than the six. We've alleged many misstatements, so you don't have to consider the two that are in the March 10th statement, but just because the district court didn't have to, it says may, and it's unnecessary to the court, doesn't mean it was error for the district court to do so. And in terms of the discovery violation itself, I want to be clear, you know, so it was an interrogatory, interposed towards the end of discovery, and the March 10th statement wasn't listed sort of in response to the interrogatory answer or sort of what all the misstatements, you know, that you're relying on here. That is true, but the way we know this is harmless is the March 10th statement was identified as materially misleading in the complaint, and that is at A38, and it's paragraphs 106 to 109. So it's right there in the complaint, the March 10th statement as materially misleading. So this idea that they were surprised by, you know, the SEC relying on it is simply, you know, not tenable. And why, I mean, why isn't it tenable if in your interrogatory statement you don't identify it? I put it in your complaint, but then decided later that in fact, in light of what had come out, that it wasn't material. So why wasn't it misleading? And what I want to specifically focus on is this question of the logic of the argument I understand from the appellant is, there's a rule, the rule says absent a showing of harmlessness, this is error. When did you show harmlessness either in the district court or on appeal? And therefore, why isn't it error? Well, so we argued on appeal, it was harmless. It's in our brief at page 39, no 11. And, but, you know, I think the, I don't believe that the rule requires the district court to make any explicit findings. And this is well within the district court's discretion. And I think the way we know the best way to read the footnote is because of what the district court did, right? I think it's fair to read the district court who, you know, the district court was presented with these misstatements. It's, you know, the SEC affirmatively moved its summary judgment, and then they made this argument in response. And then, you know, and then the SEC submitted its reply. So this was put to the, to everyone on summary judgment. So I think the best way to read the district court's footnote is that it implicitly determined that it was harmless and there was no prejudice. And there's no requirement that they make detailed finding on that. And it's an abusive discretion standard. So I don't, I think the best way to read it is how the district court read it, right? Otherwise you have to impute error to the district court that I don't see on the page. And I do also want to point out that it is important that even if, so even if you get past the, you know, I skipped right into your framework, Judge Holmes, but I do want to reiterate the point we made that this withdrawal was only raised in the But assuming you get past that forfeiture and you get past all the arguments that we've just been talking about, it does only go to two of the misstatements. And there is no requirement that there be, you know, six as opposed to four misstatements. So I don't think in the end of the day, it ultimately changes the liability analysis. And we know that because of footnote 14 in the district court's opinion, where it was, it was about a different misstatement, but he says, you know, he's interacting with defendant's argument and says, even if I were to agree, it doesn't change the liability analysis. So counsel, counsel, why don't we, why don't you just concede it then? Why don't you just say, the first two statements are out, we lost, we conceded, we conceded them below, we can see them here, makes no difference. Isn't that your argument? I mean, we're making this argument all in post trials submissions, because it was only raised in the reply brief. No, I understand. But you say it doesn't matter. You say four is enough for liability. We don't need any, we don't even need those two to win our case. So why not concede them and move on? I don't believe we need them to win this case. I just I think that the I would like to defend the district court's analysis. I don't think the district court erred in considering those misstatements. I don't think it made a mistake. I think that the best way to read that footnote is it was put as a choice to the district court and the district court wanted to reach those we don't we don't need them to win. We didn't need them before the district court either. So if I if I make an argument as as the as the non movement at the district court and say, look, they can't use these, these are discovery violation. And you choose not to defend whether they are or not and just say, look, district court, you decide. I mean, haven't you in effect conceded it? And at that point, the district court shouldn't consider it. I don't think it's our to do so because of the, the this standard of review for the district court. I don't think I just don't think I would read that for the footnote as a concession. It's not because it's not saying we agree there's a discovery violation. It's just saying we're not going to get into it. Because I mean, that's not that's not disagreeing. You're saying, I mean, typically, in the adversarial process, one says you just had a violation. And you say, I did not. And here's why. But you didn't do that. No, below, we did not do that. We said we didn't need them. And so we didn't, you know, get into it. But I think for all the reasons that we've discussed here today, you know, it was not error for the district court to to to consider them anyways, given that they weren't that, you know, that any discovery violation was harmless, and it was put to the district court as a choice. But again, as we've talked about here today, I think in the end of the day does not actually change the liability analysis or the remedy analysis at all. And again, I also want to just reminded the court that we're talking here only in the anti fraud piece, we have the entire separate section five piece of the case, which fully supports the remedies on an independent basis. And let me just put a finer point on it. I make clear, it's clear to me how this might be configured. If the issue if it is said that, that these two statements, even if even let's say, assuming the court erred in making in addressing those two statements, your conclusion would be that you win anyway, right? Correct. Correct, gentlemen, because there's, there's no requirement that there be, you know, a certain number of violations, it does not change, there's still a there's it does not change the counts or anything. It's, you know, there's, it's harmless error, it's harmless error, there's still a basis for all of the fraud liability. And there's still a basis for all the remedies. Does it do anything for the penalty analysis of some of these statements drop out? So that's a good question. I don't think it does. So here, there might be other cases where it did, but because the penalty was based on the gross pecuniary gain, and the gross pecuniary gain was calculated the way we talked about earlier, it was not calculated on a violation by violation basis, but it was based on the some of the unjust proceeds from the offering. So I don't believe that it affects the pen, the disgorgement or the penalty analysis here, although it might in a different case. Since it came up only in connection with the and very specifically, your response to this, what I understood appellant to be saying in the in their response to your supplemental authority was, okay, court, at least in now in light of Lou, if we get nothing else out of this, we should get a remand to to have the deduction of legitimate business expenses, your response to that. So my response to that is I don't think this case is a good candidate for a remand on Lou for a couple of reasons. The main reason being that they did not make any argument for a deduction for legitimate business expenses, either below or in their appellate briefs. And so and so the issue is simply forfeited. And I would point this court to a recent panel order from this court in the United States be raw power case that's at docket 18 dash 419. And this the order was July 17. So it was post Lou. And it raises variation sort of it was in the context of a denial of a petition for panel rehearing. And the petition said, I'd like to raise this legitimate, I would like to raise a legitimate business expenses argument post Lou, and the panel of this court found it forfeited because they had not raised legitimate business expense argument and were in their appellate briefs. And so I think you know, that analysis would apply here as well. They did not raise any argument about legitimate business expenses. In this courts in the briefs to this court or below. They were not foreclosed in any way by making for arguing that and there's nothing about Lou, they should put that you know that that changed that they could have made that argument. So I think that this is not a good case for a 18 for 119. United's raw power. Was do you know was that case published? The decision before the petition for a hearing was published and I can give you the site for that as well. But the the pan the decision denying panel rehearing I don't believe was published. So Lou came up on that petition for rehearing. Right Lou, Lou, the petition for rehearing was based on Lou because that Lou had come up in between the two. And so, right, so it's it's dockets. 18 411 at what point, in your opinion, would it become a plain miscarriage of justice? Let's just say that there was, you know, three misrepresentations that resulted in a hundred damage. A hundred damage properly would have been considered. At what point does it become a plain miscarriage of justice to not permit that? Certainly, right. I think that's, you know, up to this court's discretion. And if there were some sort of suggestion, the submissions that there was, you know, a large amount, as your hypothetical suggests, of business expenses, then, you know, then I think a remand might be appropriate, even if there was a forfeiture. But here and this is touched on in the raw power decision as well. Not only is there a forfeiture, but there is there was no suggestion in their 28 day letter of what they were going to argue was going to be legitimate business expenses. So, again, I think this is just not the appropriate case for a remand. Thank you. I see my time is almost up. So unless this court has any further questions, we would respectfully ask the court to affirm the judgment of the district court. Just one more question about the application of us considering Lew and possibly remanding. Are you aware of any cases that we've decided in the past, despite what the panel in the raw court case just out wasn't available to the parties at the time of their of their briefing, we're going to consider it. Because I think you're in a position here where we've gone both ways. Yeah, I mean, I think I think I think it depends on the analysis of exactly what the new rule that's being announced. And so I think that's why the raw power case here is useful. It's it's sort of an indication that this court does not think that Lew is the kind of case that has before Lew in this circuit, we're considering legitimate business expenses arguments. One of the cases that I see my time is up. So I can finish this. One of the cases that the defendant site in their own brief for a different proposition had a discussion in it. It's the SEC versus United Ventures case of whether there should be a deduction for legitimate business expenses. And ultimately, the court didn't didn't deduct because they found that they weren't legitimate. But again, this, the idea that the parties could ask for that deduction was out there pre Lew, in many cases in this court and others. Thank you, counsel. Thank you, counsel. Who's going to take up the mantle? You have 46 seconds here. Thank you, Your Honor, I will bravely take up the mantle, I would like to turn to an issue that I was asked about, and which was also addressed in in, in my opponent's argument, which is why does it matter if there are these other alleged misrepresentations? Why does the March 10? And those two statements in it matter. And I think the reason it matters is particularly on remedies. I think it matters anyway, as to liability, but particularly on remedies. The March 10 email alone is a third of the SEC's case. The next one in line in the earliest alleged misrepresentations in the offering. The next one is the Victor Tiscareño one, which I also think is deeply troubled. So you're talking 30 to 50% of the violations the SEC or the district court must evaluate the egregiousness of the errors of the alleged misstatements. And that would be a sizable portion portion as to disgorgement. So well, are you trying to tie each or a certain sum to each violation? As far as gross pecuniary gain? Well, yes, if so, if the earliest portions of the misrepresentations were eliminated, of course, the district court could not find even under the SEC's argument could not find disgorgement based on the first part of the offering when there were no alleged misrepresentations made. So the more misrepresentations are knocked out, the more of the offering that simply could not be disgorged at all. Thank you. All right. Thank you very much. Council. Thank you. Case is submitted.